UNITED STATES of America, Appellee,

v.

Anne E. CUNAVELIS, a/k/a Kiki, Defendant–Appellant.

No. 1614, Docket 92–1092.

United States Court of Appeals, Second Circuit.

Argued June 2, 1992.

Decided July 21, 1992.

Karen Rush Shingler, Burlington, Vt., for defendant-appellant.

Thomas D. Anderson, Asst. U.S. Atty., Burlington, Vt. (Charles A. Caruso, U.S. Atty., David V. Kirby, Asst. U.S. Atty.), for appellee.

Before: OAKES, Chief Judge, NEWMAN and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Pursuant to a plea agreement under Fed. R.Crim.P. 11(e)(1)(C), Anne Cunavelis pled guilty to one count of a three-count indictment. In return for her guilty plea, the Government agreed to a four-level reduction in whatever Guidelines offense level would later be determined by the district court.

At sentencing, the District Court for the District of Vermont, Fred I. Parker, *Chief Judge*, held that the plea agreement bound him to reducing Cunavelis's Guidelines offense level by exactly four levels, no more and no less. In setting the offense level, Chief Judge Parker imposed a two-level upward adjustment for obstruction of justice based on his earlier finding that Cunavelis had testified untruthfully before him at a suppression hearing.

On appeal, Cunavelis argues that the district court erred (1) by holding that it lacked discretion to reduce her Guidelines offense level more than the four levels called for by the plea agreement, and (2) by automatically imposing an upward adjustment for obstruction of justice. We agree that Fed.R.Crim.P. 11(e)(1)(C) bound the district court to a four-level reduction but remand for reconsideration of the upward adjustment for obstruction of justice.

## BACKGROUND

Following her arrest by DEA agents for distributing large amounts of cocaine, Anne Cunavelis consented to a search of her apartment. That search produced cash, drug paraphernalia, and approximately 84 grams of marijuana. She also made

inculpatory statements to DEA agents during the search.

Cunavelis was indicted for conspiracy to distribute cocaine, distribution of cocaine, and travelling in interstate commerce to facilitate an illegal enterprise. She moved to suppress her inculpatory statements on the ground that the DEA agents did not advise her of her *Miranda* rights. She also moved to suppress evidence seized during the warrantless search of her apartment as obtained in violation of her Fourth Amendment rights.

Chief Judge Parker conducted a suppression hearing at which Cunavelis and four DEA agents testified. Cunavelis testified that she was not given her *Miranda* warnings and that she was coerced into letting the DEA agents search her apartment. The DEA agents contradicted Cunavelis, testifying that they did inform her of her *Miranda* rights and that they did not browbeat her to extract her consent to search the apartment. Chief Judge Parker denied Cunavelis's suppression motions, "find[ing] that [her] testimony was not credible, or truthful, in several regards." Cunavelis later executed a plea agreement with the Government pursuant to which she agreed to plead guilty to the conspiracy count and cooperate with the Government. In return, the Government agreed to dismiss the other two counts and to make a motion for a downward departure from the applicable Guidelines range pursuant to Guidelines section 5K1.1. With respect to the degree of downward adjustment, the plea agreement provided:

> The United States and ANNE CUNAVELIS agree, pursuant to Federal Rules of Criminal Procedure 11(e)(1)(C), that the final guideline offense level as found by the Court be reduced by four levels and that the defendant be sentenced within the corresponding guideline range. The sentence she receives within this range as well as the imposition of a fine and a term of supervised release is within the sole discretion of the sentencing court.

After the plea, the Probation Department prepared a Presentence Report ("PSR") that calculated her base offense level at 34, reflecting offense conduct involving at least 15 kilograms of cocaine. The PSR recommended that the offense level be increased by two levels for obstruction of justice (pursuant to section 3C1.1 of the Guidelines) based on Cunavelis's untruthful testimony at the suppression hearing. With a recommendation for a two-level downward adjustment for acceptance of responsibility, the PSR concluded that the final offense level should be 34 (before the four-level decrease required by the plea agreement).

Cunavelis objected to the PSR on two grounds: (1) that the amount of cocaine attributed to her was excessive, and (2) that the two-level enhancement for obstruction of justice was not justified. She also argued at sentencing that, although the plea agreement bound her and the Government to a four-level reduction for substantial assistance, the district court nevertheless had discretion to depart further since it was not a party to the agreement.

The district court conducted an evidentiary hearing to determine how much cocaine should be attributed to Cunavelis and concluded that she was responsible for at least 15 kilograms, resulting in a base offense level of 34. The district court then added two levels for obstruction of justice, holding that the enhancement "naturally follow[ed]" and was "required" by the court's rejection of Cunavelis's testimony at the suppression hearing. Finally, Chief Judge Parker rejected Cunavelis's argument that he could depart further than the four-level reduction for substantial assistance called for by the plea agreement, holding that Rule 11(e)(1)(C) required him to implement the parties' agreement.

On appeal, Cunavelis argues that the district court erred by concluding that it was without discretion to depart further than the four levels required by the plea agreement and by imposing a two-level enhancement for obstruction of justice.

## DISCUSSION

*Four–Level Reduction for Substantial Assistance*

■ Cunavelis cites several cases for the proposition "that once the government has

moved for a downward departure based upon substantial assistance ... it is within the sentencing court's authority to exercise its discretion in determining the appropriate extent of departure." *See, e.g., United States v. Ah–Kai*, 951 F.2d 490 (2d Cir. 1991); *United States v. Pippin*, 903 F.2d 1478 (11th Cir.1990). We agree with this non-controversial statement and the cases from which it is distilled—as far as they go. However, they are simply inapplicable to plea agreements governed by Fed. R.Crim.P. 11(e)(1)(C).

The Guidelines emphatically state that "[t]he rules set forth in Fed.R.Crim.P. 11(e) govern the acceptance or rejection of [plea] agreements." U.S.S.G. Ch. 1, Pt. A., intro. comment 4(c) (Nov. 1991). Accordingly, Rule 11—not Guidelines section 5K1.1—controls.

Rule 11 provides in relevant part:

(e) Plea Agreement Procedure.

(1) In General. The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:

(A) move for dismissal of other charges; or

(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) agree that a specific sentence is the appropriate disposition of the case.

Fed.R.Crim.P. 11(e) (1991).

■ The Rule further explains that "[i]f the agreement is of the type specified in subdivision (e)(1)(A) or (C), the court may accept or reject the agreement, .... If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement." *Id.* Thus, the rule plainly contemplates that plea agreements executed pursuant to subdivision (e)(1)(A) or (C)—in contrast to the precatory nature of agreements made under subdivision (e)(1)(B)—are binding on the district court. The district court may accept or reject an (A) or (C) plea, but it may not modify it. *See United States v. Fernandez*, 960 F.2d 771, 773 (9th Cir.1992) (per curiam); *see also United States v. Bohn*, 959 F.2d 389, 391 (2d Cir.1992) ("[i]f [district judge] accepts the bargain ... he must conform the sentence to that bargain"); Fed.R.Crim.P. 11 advisory committee's note (1991) ("critical to a type (A) or (C) agreement is that the defendant receive the contemplated charge dismissal or agreed-to sentence").

Our reading of the Rule is supported by the history of its adoption:

The legislative history of 11(e)(3) shows that Congress wished to preclude a district court from accepting a plea agreement which provides for a specific sentence and then imposing a more lenient sentence than that provided for in the plea agreement. The version of 11(e)(3) proposed by the Supreme Court in 1974 stated that "the court shall inform the defendant that it will embody in the ... sentence the disposition provided for in the plea agreement or another disposition more favorable to the defendant than that provided for in the plea agreement." The House Judiciary Committee then deleted the language "or another disposition more favorable to the defendant than that provided for in the plea agreement," and the House affirmed the committee's action by rejecting on the floor an amendment offered to restore the Supreme Court's version of the rule. The Senate accepted the House's version of the rule. See 121 Cong.Rec. 23322 (July 17, 1975) (discussion of legislative history of the rule).

By deleting the Supreme Court's "more favorable to the defendant" language, Congress evidenced its intent to require a district court to sentence a defendant in accordance with the plea agreement.

*United States v. Semler,* 883 F.2d 832, 833–34 (9th Cir.1989). Thus, Chief Judge Parker correctly determined that, having accepted the plea agreement between Cunavelis and the Government, he was bound by its terms.

*Obstruction of Justice Enhancement*

■ The Sentencing Guidelines provide that "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution or sentencing of the instant offense, [the district court shall] increase the offense level by 2 levels." U.S.S.G. § 3C1.1 (Nov. 1991). The Guidelines caution that, "[i]n applying this provision in respect to alleged false testimony or statements by the defendant, such testimony or statements should be evaluated in a light most favorable to the defendant." *Id.,* comment (n. 1). We have interpreted this application note as "'instruct[ing] the sentencing judge to resolve in favor of the defendant those conflicts about which the judge, after weighing the evidence, has no firm conviction.'" *United States v. Matos,* 907 F.2d 274, 276 (2d Cir.1990) (quoting *United States v. Franco–Torres,* 869 F.2d 797, 801 (5th Cir.1989)); *accord United States v. Rojo–Alvarez,* 944 F.2d 959, 969 (1st Cir.1991); *United States v. Barbosa,* 906 F.2d 1366, 1370 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 394, 112 L.Ed.2d 403 (1990); *United States v. Wallace,* 904 F.2d 603, 605 (11th Cir.1990).

This standard is obviously different—and more favorable to the defendant—than the preponderance-of-evidence standard a district court applies in determining whether to grant a suppression motion. *See United States v. Thompson,* 962 F.2d 1069, 1071 (D.C.Cir.1992) (standard of proof in applying section 3C1.1 is greater than a preponderance of the evidence). If the district court must apply a more rigorous standard in evaluating a defendant's testimony for sentencing purposes, it follows that the court may not automatically impose an upward adjustment for obstruction of justice whenever a defendant's testimony has been rejected by judge or jury. *See United States v. Padron,* 938 F.2d 29, 30 (2d Cir.

1991) (per curiam); *United States v. Bonds,* 933 F.2d 152, 155 (2d Cir.1991) (per curiam); *United States v. Willis,* 940 F.2d 1136, 1140 (8th Cir.1991). Thus, implementing the standard required by Guidelines section 3C1.1, the district court, evaluating the defendant's testimony in a light most favorable to the defendant, must make an independent determination at sentencing that the defendant testified untruthfully about a material fact with the intent to impede or obstruct the prosecution or investigation of an offense. *See Thompson,* 962 F.2d 1069, 1071; *Willis,* 940 F.2d at 1140; *United States v. Lozoya–Morales,* 931 F.2d 1216, 1219–20 (7th Cir.1991).

■ In imposing the two-level enhancement for obstruction, the district court stated "as a matter of law, ... that the finding that this Court made at the time of the denial of the motion to suppress regarding the defendant's statements to the Court which the Court believed to be untruthful, that naturally follows that an obstruction of justice finding is required at this point...." This was error. The district court should not have automatically imposed the two-level enhancement for obstruction of justice, without making an independent finding at sentencing, applying the standard prescribed by section 3C1.1. *Compare Thompson,* 962 F.2d 1069, 1072 (affirming upward adjustment under section 3C1.1 where district court "unequivocally stated at the sentencing hearing that he found [defendant]'s testimony untruthful and an obstruction of justice").

In *Matos,* we affirmed a two-level enhancement for obstruction of justice when the district court expressly found that the defendant had lied during a suppression hearing about a material fact and with the intent to impede the disposition of the charges against him. *See Matos,* 907 F.2d at 276; *see also Thompson,* 962 F.2d 1069, 1071. If, on remand, the district court makes similar factual findings, then imposition of the obstruction of justice enhancement may, of course, be appropriate. In the absence of such findings, however, we are constrained to vacate and remand for resentencing.

## CONCLUSION

Accordingly, we affirm the district court's imposition of the four-level downward adjustment, as required by the plea agreement. We vacate and remand for reconsideration of the upward adjustment for obstruction of justice.