**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Terry ZAJAC, Defendant–Appellant.**

**No. 94–6356.**

United States Court of Appeals, Sixth Circuit.

Argued June 16, 1995.

Decided Aug. 7, 1995.

Timothy R. DiScenza, Asst. U.S. Atty. (argued and briefed), Memphis, TN, for plaintiff-appellee.

Stephen B. Shankman (argued and briefed), Memphis, TN, for defendant-appellant.

Before: LIVELY, NELSON, and SILER, Circuit Judges.

LIVELY, Circuit Judge.

■ This appeal requires us to consider the proper standard of proof to be applied by a sentencing judge in determining whether a defendant has committed perjury and is thus subject to an enhanced sentence for obstruction of justice. The United States Sentencing Guidelines (U.S.S.G.) provide for a two-level increase above the base offense level for a defendant found to have obstructed justice. U.S.S.G. § 3C1.1 (1994). The non-exhaustive list of examples of conduct that constitutes obstruction of justice includes "committing, suborning, or attempting to suborn perjury." § 3C1.1 n. 3(b). The district court found that the defendant-appellant committed perjury during his trial on drug-related charges and included a two-level enhancement in his sentence.

## I.

This is the second appeal by this defendant. The facts are treated more fully in the opinion rendered following the first appeal, and will be repeated only so far as necessary to address the single issue now before us. See *United States v. Ledezma*, 26 F.3d 636 (6th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 349, 130 L.Ed.2d 305 (1994).

Terry Zajac and nine other defendants were charged in a two count indictment with unlawfully and intentionally possessing 1600 kilograms of cocaine with intent to distribute, as well as intentionally distributing this cocaine, and aiding and abetting the possession

of 351 kilograms of cocaine, with intent to distribute. Most of the defendants entered guilty pleas; only Zajac and Josephine Ledezma went to trial. At trial, the jury found Zajac guilty on both counts, and the court sentenced him to 292 months' imprisonment, to run concurrently as to each count, and five years of supervised release. This sentence included the perjury enhancement.

On appeal a panel of this court affirmed Zajac's conspiracy conviction, reversed his aiding and abetting conviction, reversed his sentence enhancement for obstruction of justice and vacated his sentence and remanded for resentencing. *Ledezma*, 26 F.3d at 646. In vacating the sentence, this court held that the trial court did not clearly identify the portions of Zajac's testimony it found to be perjurious. Although the district court had made an independent finding of perjury, as required by *United States v. Dunnigan*, —— U.S. ——, ——, 113 S.Ct. 1111, 1117, 122 L.Ed.2d 445 (1993), the lack of clearly identified perjurious testimony required reversal and remand: "without reference to any particular testimony ... we are unable to discharge our appellate responsibility to determine whether the court's findings are clearly erroneous." *Ledezma*, 26 F.3d at 645.

Upon remand, the district court cited three portions of Zajac's trial testimony that supported a perjury finding, based on a preponderance of the evidence produced during trial. At the conclusion of a resentencing hearing, the trial judge identified the three instances of perjury:

THE COURT: The Court is of the opinion, based on the preponderance of the evidence produced in the trial of this case that in these three particulars the defendant, Mr. Zajac, did perjure himself during his testimony in defense of the charges against him. In particular I find that the questions and answers that I am going to now set out were—the answers were perjurious. "Were you involved within Manuel Costalanos or Joe Costalanos, Sr., or anybody else in distributing or attempting to distribute or anything involving the cocaine business?" Answer: "No." "Have you ever seen one of these things, Terry, what some people call a brick of cocaine,

have you ever seen a package like this?" Answer: "I have never seen one of these, but I have seen them on t.v. before." And then third, "Do you remember meeting with Robert Ferrer on or about December the 5th, 1990, at the La Barca Restaurant and paying him some money that Mannie Costalanos supposedly owed him, do you remember anything about it?" "If anything like that happened, I should remember it but I don't." That question and that portion of the answer I do not find to be perjurious but the following answer, "And I still say that I never gave him any money," I find to be perjurious. All of these findings are based on a preponderance of the evidence that was produced during the trial of this case. The Court is of the opinion that its sentence should be reinstated.

(JA at 87–88)

## II.

The dispute in this case centers on Application Note 1 to the 3C1.1 Commentary, which states:

This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision. *In applying this provision in respect to alleged false testimony or statements by the defendant, such testimony or statements should be evaluated in a light most favorable to the defendant.*

U.S.S.G. § 3C1.1 n. 1 (1994) (emphasis added).

Zajac argues that the district court's finding that he committed perjury at his trial is against the weight of the evidence and resulted from the district court's application of the wrong standard of proof in making its determination. He contends that the court should have decided the perjury question under a "clear and convincing" standard rather than under a "preponderance of the evidence" standard. According to Zajac the last sentence of Note 1, italicized above, clearly indi-

cates that the government must prove perjury by more than a preponderance of the evidence.

At the trial, Zajac testified that he had a serious alcohol problem during the time of drug activities charged to him and his co-conspirators. He now argues that he was unable to remember many of his activities, and thus could only respond that he did not remember when asked about his connection with the other conspirators. Zajac maintains that by accepting the testimony of other members of the Ledezma drug ring when it conflicted with his own testimony, the district court failed to consider his statements in a light most favorable to him. This failure to adhere to the admonition in Note 1, he argues, constituted an abuse of discretion.

The government responds that courts have traditionally employed a preponderance of the evidence standard in sentencing, and the guidelines do not require a different standard with regard to perjury. The admonition in Note 1 merely instructs a sentencing judge to give a defendant charged with perjury the benefit of any doubt; it does not require the judge to create doubt in his own mind where none exists.

### III.

The district courts have discretion to determine whether perjury has occurred. Once a district court determines that obstruction of justice has occurred by perjury or other activities, however, it has no discretion, and must apply § 3C1.1. *United States v. Medina*, 992 F.2d 573, 591 (6th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1049, 127 L.Ed.2d 371 (1994); *United States v. Morgan*, 986 F.2d 151, 153 (6th Cir.1993); *United States v. Alvarez*, 927 F.2d 300, 303 (6th Cir.), *cert. denied,* 500 U.S. 945, 111 S.Ct. 2246, 114 L.Ed.2d 487 (1991).

### A.

This court has consistently applied the clearly erroneous standard to district court applications of § 3C1.1. See *United States v. Hamilton*, 929 F.2d 1126, 1130–31 (6th Cir.1991); *Alvarez*, 927 F.2d at 303; *United States v. Perez*, 871 F.2d 45, 47–48

(6th Cir.), *cert. denied,* 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989). As we explained in *United States v. Crousore*, 1 F.3d 382, 385–86 (6th Cir.1993), conflicts between a defendant's testimony and other evidence raise credibility issues, and "credibility determinations are for the trial court, not for the court of appeals. Unless the district court's finding of fact is clearly erroneous, we must accept it."

When making findings of perjury, district courts are required to make "clear" or "specific" findings that an obstruction of justice occurred. In *United States v. Burnette*, 981 F.2d 874, 879 (6th Cir.1992), this court stated that "if an obstruction of justice enhancement is to be given for false testimony, we require the sentencing judge, who has the unique 'opportunity ... to judge the credibility of the witnesses,' to make a clear finding that the defendant has lied with respect to testimony given under oath." (citation omitted). Further, "when assigning points for obstruction of justice, the district court should identify specifically which statements or actions by a defendant constitute an obstruction of justice." *United States v. Clark*, 982 F.2d 965, 970 (6th Cir.1993).

### B.

As a general rule, where factual findings relevant to sentencing are concerned, district courts apply a preponderance of the evidence standard. *United States v. Hill*, 973 F.2d 459, 461 (6th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1056, 122 L.Ed.2d 362 (1993). Prior to enactment of the guidelines, the Supreme Court held that due process is satisfied if sentencing factors that are not elements of the charged offense are applied by the sentencing court under a preponderance of the evidence standard. *McMillan v. Pennsylvania*, 477 U.S. 79, 91, 106 S.Ct. 2411, 2419, 91 L.Ed.2d 67 (1986). In approving application of a preponderance of the evidence standard, the *McMillan* Court noted that "[s]entencing courts have traditionally heard evidence and found facts [in sentencing] without any prescribed burden of proof at all." *Id.* This court has held that the adoption of federal sentencing guidelines has not changed this approach. "We

discern no reason to accept appellant's claim that the advent of a new sentencing system requires application of a standard higher than that accepted in *McMillan.*" *United States v. Carroll,* 893 F.2d 1502, 1506 (6th Cir.1990); see also *United States v. Walton,* 908 F.2d 1289, 1300 (6th Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990).

### C.

The Supreme Court first addressed § 3C1.1 sentence enhancements in *United States v. Dunnigan,* —— U.S. ——, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). In that case, the Court held that a court should enhance a defendant's sentence under U.S.S.G. § 3C1.1 upon a proper determination that the defendant committed perjury at trial. Sharon Dunnigan had been convicted by a jury of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 841. The government presented five witnesses who took part in or observed the defendant's trafficking activities. Ms. Dunnigan took the stand as the sole witness in her defense and denied possessing or distributing cocaine. Upon conviction, the court increased the defendant's sentence by two offense levels pursuant to § 3C1.1. The Court of Appeals for the Fourth Circuit reversed the district court's § 3C1.1 enhancement, holding that such an enhancement based on alleged perjury at trial would be unconstitutional. "It disturbs us that testimony by an accused in his own defense, so basic to justice, is deemed to 'obstruct' justice unless the accused convinces the jury." Under this approach, the court explained, "every defendant who takes the stand and is convicted [would] be given the obstruction of justice enhancement." *United States v. Dunnigan,* 944 F.2d 178, 183 (4th Cir.1991).

The Supreme Court reversed. The Court first rejected the idea that "every accused who testifies at trial and is convicted will incur an enhanced sentence under § 3C1.1 for committing perjury." Inaccurate testimony due to mistake or confusion, or truthful testimony as to insanity or self-defense, the Court explained, would not result in enhancement. Courts are also prevented from automatically enhancing a defendant's sentence simply because the defendant testified and was convicted: if the defendant objects to an enhancement, a court is required to make specific and independent findings that establish perjury. *Id.* —— U.S. at ——–——, 113 S.Ct. at 1117–18. Also, the Court concluded that a sentence enhancement for perjury does not undermine a defendant's right to testify. The right to testify does not include a right to commit perjury, and the fact that § 3C1.1 might become a factor in a defendant's decision whether to testify does not make § 3C1.1 unconstitutional.

Following *Dunnigan* this court has rejected the argument that it is unconstitutional to increase a defendant's sentence because the defendant has committed perjury. In *United States v. Medina,* 992 F.2d 573, 591 (6th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 371 (1994), we stated, "Where the defendant is believed to have attempted to obstruct justice by lying during his testimony, the Constitution does not protect a defendant from increased sentencing." Even though § 3C1.1 might affect a defendant's decision to testify or remain silent, there is no "categorical ban on every governmental action affecting the strategic decisions of an accused, including decisions whether or not to exercise constitutional rights." *Dunnigan,* —— U.S. at ——, 113 S.Ct. at 1117.

### IV.

With this background, we now turn to the standard of proof issue in light of the admonition in Note 1.

### A.

Although this court has consistently approved district courts' applications of a preponderance of the evidence standard to § 3C1.1 enhancements for perjury, there is a split among the courts of appeals. Relying on cases from other courts, Zajac argues that this court has failed to give sufficient consideration to the admonition of Note 1 that courts should consider allegedly perjurious statements in a light most favorable to the defendant.

Three courts of appeals have concluded that the admonition contained in the final sentence of Note 1 requires a sentencing judge to apply a higher standard of proof than preponderance of the evidence in determining whether a defendant has committed perjury.

The Court of Appeals for the District of Columbia has recognized that in *McMillan* the Supreme Court approved the use of a preponderance of the evidence standard in making sentencing determinations. Nevertheless, the court could find no explanation for Note 1's admonition other than that the Sentencing Commission intended to require a higher degree of proof of perjury before the § 3C1.1 enhancement could be imposed. *United States v. Montague,* 40 F.3d 1251, 1253–54 (D.C.Cir.1994). On this basis the court held that "the clear-and-convincing standard is the appropriate standard by which to evaluate defendant testimony for section 3C1.1 perjury enhancements." *Id.* at 1254.

The Court of Appeals for the Second Circuit found that Note 1 requires a standard more favorable to the defendant than preponderance of the evidence. In *United States v. Onumonu,* 999 .F.2d 43, 45 (2d Cir.1993), the court concluded that its statement in an earlier case that Note 1 instructs "the sentencing judge to resolve in favor of the defendant those conflicts about which the judge, after weighing the evidence, has no firm conviction," actually "sounds to us indistinguishable from a clear-and-convincing standard." *Id.* (citing *United States v. Cunavelis,* 969 F.2d 1419, 1423 (2d Cir.1992)). The sentencing judge in *Onumonu* had referred to Note 1, stating that "we're not talking about a preponderance of the evidence here," and then found the defendant committed "flagrant perjury on a material issue." *Id.,* at 47.

In *United States v. Willis,* 940 F.2d 1136, 1140 (8th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 1411, 122 L.Ed.2d 782 (1993), the court of appeals interpreted Note 1 to require that "[n]o enhancement should be imposed based on the defendant's testimony if a reasonable trier of fact could find the testimony true." The court, however, did not state explicitly that it was departing from the preponderance of the evidence standard usually applied to fact-finding at sentencing.

## B.

We believe if the Sentencing Commission had intended to direct courts to depart from the traditional standard of proof applied in making sentencing determinations, which was approved by the Supreme Court in *McMillan* just one year before the sentencing guidelines went into effect, it would have announced the exception clearly. This conclusion is buttressed by the fact that in its first case concerning § 3C1.1 after adoption of the guidelines, the Supreme Court did not indicate that a departure from the traditional standard of proof applies when a sentencing judge is required to make a determination under the guidelines of whether a defendant has committed perjury. *Dunnigan,* —— U.S. at —— –——, 113 S.Ct. at 1115–19. It is noteworthy that the guidelines in effect when *Dunnigan* was decided contained language similar to that now contained in Note 1: "In applying this provision, suspect testimony and statements should be evaluated in a light most favorable to the defendant." U.S.S.G. § 3C1.1 n. 2 (1989).

We believe a preponderance of the evidence standard continues to be the correct standard for all fact-finding at sentencing. The admonition in Note 1 does not change the standard, in our opinion. Application of a preponderance of the evidence standard requires a fact-finder to weigh the evidence on both sides of a contested issue. We interpret the admonition to require the sentencing judge, as he or she weighs the evidence, to be especially alert for factors that militate in favor of finding alleged false testimony by the defendant actually to be true. This approach satisfies the Supreme Court's views expressed in *Dunnigan:*

> Of course, not every accused who testifies at trial and is convicted will incur an enhanced sentence under § 3C1.1 for committing perjury. As we have just observed, an accused may give inaccurate testimony due to confusion, mistake or faulty memory. In other instances, an accused may testify to matters such as lack

of capacity, insanity, duress or self-defense. Her testimony may be truthful, but the jury may nonetheless find the testimony insufficient to excuse criminal liability or prove lack of intent.

—— U.S. at ——, 113 S.Ct. at 1117. If any circumstances supporting a defendant's denial that he or she committed perjury have sufficient force, when viewed most favorably to the defendant, to prevent the sentencing judge from having a firm conviction that the defendant did give perjurious testimony, the judge should not impose a § 3C1.1 enhancement.

### C.

The evidence most favorable to Zajac was that he was consuming large quantities of alcohol during the time in question. If he had answered the critical questions identified by the judge at the resentencing hearing by stating only that he could not remember, we would have a different case. Instead, he denied any involvement in the drug conspiracy. Furthermore, he gave these answers in response to questions from his own counsel. These questions were not "sprung on" Zajac by the prosecutor. They dealt with facts that defendant's counsel considered important, and they appear to have been designed to elicit categorical denials. In fact, after first stating that he could not remember a meeting at which he was alleged to have passed money to a co-conspirator, the defendant went out of his way to supplement his answer by saying, "And I still say that I never gave him any money." Each of the answers referred to by the sentencing judge was in direct contradiction of testimony from other witnesses, some of which was corroborated by other evidence. There is no contention that Zajac did not give the answers the judge found to be perjurious. On the entire record we cannot find that the district court abused its discretion in applying a § 3C1.1 enhancement for perjury in this case. Accordingly, the judgment of the district court is **AFFIRMED.**