**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**David VIOLA, Defendant–Appellant.**

No. 00–1422.

United States Court of Appeals,
Sixth Circuit.

Oct. 17, 2001.

382

Before KENNEDY, GUY and BOGGS, Circuit Judges.

KENNEDY, Circuit Judge.

David Viola, a federal prisoner, appeals the sentence imposed (Att. 2; J.A. at 16–22) following his conviction on one count of conspiracy to possess with intent to distribute and to distribute methylenedioxymethamphetamine (MDMA), a Schedule II controlled substance, in violation of 21 U.S.C. § 846.

Viola was indicted on the count described above along with one count of possession with intent to distribute over 1000 grams of MDMA in violation of 21 U.S.C. § 841(a)(1), and one count of knowingly causing to be brought into the United States over 1000 grams of MDMA in violation of 18 U.S.C. § 545 (J.A. at 12–14). After the district court granted his motion to suppress evidence obtained during a search of his house, a jury trial commenced and Viola was convicted of the conspiracy count on December 10, 1999. The jury acquitted him of the remaining two counts. The district court sentenced Viola on April 7, 2000, to 121 months in prison, followed by four years of super-vised release. This sentence was based upon a total offense level of 32 and a criminal history category of I, resulting in a guidelines sentencing range of 121–151 months. The district court adopted the factual findings of the presentence investigation report (PSR), except that the court determined that Viola was responsible for a lower quantity of drugs than that set forth in the PSR.

On appeal, Viola argues that: (1) the district court erred in its assessment of his base offense level, in assessing four points for a leadership role in the offense, in assessing two points for obstruction of justice, and in failing to provide a hearing and written opinion to substantiate its assessments; and (2) he was denied due process where the jury was not instructed to determine beyond a reasonable doubt the amount of drugs attributable to Viola.

We affirm the district court's judgment because we find that it gave Viola an opportunity to dispute the sentencing enhancements, that the court did not clearly err in its findings regarding those enhancements, and any error in failing to instruct the jury to find the drug quantity beyond a reasonable doubt was harmless in this case.

Viola's allegation that he was not granted a hearing regarding the sentencing enhancements is without merit. Viola submitted objections to the drug quantity, assignment of a leadership role, and obstruction of justice enhancement, and was given ample opportunity to dispute those issues during the sentencing proceeding. Instead, he insisted on repeatedly attempting to raise and argue other pro se issues regarding the court's jurisdiction and the constitutionality of the sentencing guidelines (J.A. at 563–79). The district court made its rulings on the record (J.A. at 587–88) and, while not extensive, the court's comments and reference to the

PSR are adequate to allow appellate review. *See United States v. Vandeberg*, 201 F.3d 805, 809–810 (6th Cir.2000); *United States v. Miller*, 161 F.3d 977, 984 (6th Cir.1998).

This court reviews a district court's drug-quantity determination for clear error. *United States v. Hernandez*, 227 F.3d 686, 697 (6th Cir.2000), *petition for cert. filed* (Feb. 5, 2001) (No. 00–8435); *United States v. Owusu*, 199 F.3d 329, 338 (6th Cir.2000). The government must prove the amount attributable to the defendant by a preponderance of the evidence. *Hernandez*, 227 F.3d at 686. "Testimonial evidence from a coconspirator may be sufficient to determine the amount of drugs for which another coconspirator should be held accountable." *Id.; Owusu*, 199 F.3d at 339.

■ Viola's PSR set the drug quantity for sentencing purposes at 60,000 MDMA pills which, when converted into the marijuana equivalent, called for a base offense level of 30. The district court, however, agreed with Viola that this quantity was not supported by the record and, with the government's concurrence, halved that quantity, finding instead that the evidence established that it was more likely Viola was responsible for 30,000 pills (J.A. at 27). This lowered Viola's base offense level to 26. Based on a review of the evidence, only the testimony of coconspirator Jeffrey Mitchell supports a finding of over 30,000 pills. Mitchell testified that he made approximately 30 trips to Canada for or with Viola and returned with quantities of 1000 to 3500 pills each time (Att. 3; J.A. at 70–87). In addition, Jennifer Miko testified to smuggling smaller quantities into the United States for Viola (J.A. at 238–44), and Frank Timar testified to helping Viola fill 500–600 capsules with powder MDMA at Viola's house (J.A. at 273–76). Viola's suggestion that it is impossible to know how much actual MDMA was present in each

pill and that, therefore, the district court merely "guesstimated" an amount is without merit. The district court "err[ed] on the side of caution" in determining the drug quantity attributable to Viola, *see Owusu*, 199 F.3d at 338, and, thus, did not commit reversible legal error in setting Viola's base offense level.

This court reviews the district court's factual findings regarding a defendant's role in the conspiracy for clear error as well; whether those facts warrant an enhancement under USSG § 3B1.1(a) is a legal conclusion reviewed *de novo*. *Hernandez*, 227 F.3d at 699; *Owusu*, 199 F.3d at 345. Pursuant to § 3B1.1(a), four levels are added to the defendant's base offense level "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." The following factors should be considered in determining whether to apply the enhancement:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

USSG § 3B1.1, comment. (n.4).

■ In ruling on Viola's leadership role, the district court found that "in fact, there was substantial testimony, which the jury believed, of five participants or more" (J.A. at 587). The PSR stated that more than five persons testified at Viola's trial that he paid them to transport drugs (J.A. at 602). Viola challenges this statement and, thus, the district court's finding, on the basis that "only two or three individuals were involved with regards to drug transportation at the very most" (Appellant's Brief at

27). This argument misconstrues what is necessary in order to apply the enhancement. The guideline requires only that the defendant play a leadership role in an offense that involved five or more *participants,* or was otherwise extensive. The transcript clearly supports the district court's finding that there were five or more participants in this conspiracy, whether or not they all transported drugs for Viola, and that he played a leadership role in the offense.

This circuit employs a three-step standard of review of a sentencing court's application of an enhancement for obstruction of justice under USSG § 3C1.1. *United States v. McDonald,* 165 F.3d 1032, 1034 (6th Cir.1999). First, the district court's factual findings are reviewed for clear error. *Id.* Next, the court reviews *de novo* the district court's determination of whether the facts constitute an obstruction of justice. *Id.* Third, once there has been a finding of obstruction of justice, the enhancement must be applied. "Because the enhancement language of the guideline is mandatory rather than discretionary, such enhancement is reviewed under the *de novo* standard." *Id.*

■ Viola asserts that the district court erred by not holding a hearing on the contested issue of whether he had obstructed justice and, again, merely relying upon the PSR. In recommending the § 3C1.1 enhancement, the probation office stated that Viola had "threatened potential government witnesses in an attempt to avoid prosecution" (J.A. at 603). The district court stated at the sentencing hearing that it relied on this factual finding to reject Viola's objection (J.A. at 587). If this had been the only support in the record for the enhancement, Viola's argument might have had merit. However, the special agent in charge of the case had testified at Viola's detention hearing that he had heard from two named witnesses

and three confidential informants that Viola had threatened several witnesses, including himself, with physical harm if they testified before the grand jury (J.A. at 41–48). The magistrate judge who conducted the hearing found the testimony to be credible and corroborated, in part, by the special agent's personal observation of one of those witnesses meeting Viola shortly after the grand jury hearing (J.A. at 61). Consequently, the magistrate judge denied bond (J.A. at 24) and the district court, "for the reasons set forth in the record" affirmed the magistrate judge's order (J.A. at 25). Thus, the district court had already found the reported threats to be credible and was not simply relying upon the PSR's brief statement.

The district court's factual finding that Viola had threatened witnesses complies with Fed.R.Crim.P. 32(c)(1) and is not clearly erroneous. Those facts clearly constitute an obstruction of justice and, accordingly, the district court did not err in applying a two-level enhancement under § 3C1.1.

Finally, Viola raises an *Apprendi* argument. The Supreme Court has limited a sentencing court's authority to make factual findings which affect a defendant's sentence by holding that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. 466, 489–90, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

■ Defendant's sentence was imposed under § 841(b)(1)(C), the sentencing provision for Schedule I controlled substances not covered by § 841(b)(1)(A), or (B). Because Viola's prison term of 121 months is below the statutory maximum of 20 years and was not subject to a statutory minimum, failing to have the jury determine

the drug quantity beyond a reasonable doubt did not affect Viola's substantial rights.

For these reasons, we affirm.